**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JOHN BURFORD, ET AL.                    CIVIL ACTION NO. 05-0283

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

CARGILL, INCORPORATED                   MAGISTRATE JUDGE HORNSBY

**FINAL ORDER AND JUDGMENT**

On November 7, 2012, a Fairness Hearing on the Parties' Joint Motion for Final
Approval of Settlement and Certifying the Settlement Class (the "Joint Motion") and
Plaintiffs' Motion to Approve Attorneys' Fees and Application for Approval of Enhancement
Awards (the "Fee Application") was held before the undersigned. See Record Documents
328 & 329. Having reviewed the Joint Motion, the Fee Application, the Stipulation and
Agreement of Settlement, all memorandum of law, and the evidence and arguments
presented at the Fairness Hearing, the Court **GRANTS** both motions (Record Documents
328 and 329).[1]

The parties reached a tentative settlement set forth in the Stipulation and Agreement
of Settlement ("Settlement Agreement") (Record Document 314-1). All capitalized words
and terms used but not defined herein shall have the meanings set forth in the Settlement
Agreement. The parties jointly requested that the class should be conditionally certified for
settlement purposes only, and to that end filed a Joint Motion for an Order (1) Conditionally
Certifying the Settlement Class; (2) Preliminarily Approving the Proposed Settlement; (3)

_____

[1]The parties have agreed that nothing in the Joint Motion, the Fee Application, the
supporting briefs, or the Settlement Agreement shall be taken as an admission by any
party. Additionally, a detailed Memorandum Order granting the Motion to Approve
Attorneys' Fees and Application for Approval of Enhancement Awards (Record Document
329) will issue separately.

Appointing the Special Master, CADA, and Escrow Agent; (4) appointing Plaintiffs' counsel as Class Counsel; (5) Approving the Form and Manner of Notice to Class Members; and (6) Scheduling a Fairness Hearing.  See Record Document 314.  The Court granted the motion described in the preceding paragraph on June 4, 2012, thus conditionally certifying the Settlement Class.  See Record Document 323.

Pursuant to the Settlement Agreement and the Court's Order of June 4, 2012, Cargill paid $27,500,000 into an Escrow Account for the payment of all settlement class claims, attorneys' fees and expenses, enhancement awards, administrative expenses, and escrow expenses and taxes.  The Court appointed Dan Balhoff as Special Master and Postlethwaite & Netterville as the Court Appointed Disbursement Agent ("CADA").  The Special Master and CADA are at times referred to collectively herein and in the Settlement Agreement as the Settlement Administrator.  The Court further ordered that the fees and expenses of the Settlement Administrator be paid out of the Settlement Fund.

**Rule 23 Factors**

The proposed settlement class is hereby certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  For settlement purposes only,[2] the Court finds that:

(1)  The class is so numerous that joinder of all members is impracticable.  In Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999), the Fifth Circuit stated that "although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case - 100 to 150 members - is within the range that generally satisfies the numerosity requirement."  The Mullen court also noted

---

[2]The Court takes no position on whether or not the matter could be certified as a class for litigation purposes.

that "any class consisting of more than forty members should raise a presumption that joinder is impracticable." Id.  Thus, the numerosity prong has been satisfied in this matter, as the record indicates that notice was sent to 12,076 potential settlement class members. See Record Document 328-3.

(2)  There are questions of law and fact common to the class.  The commonality test is not demanding and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.  See Mullen, 186 F.3d at 625.  Here, as noted during the Fairness Hearing, there are multiple issues of law and fact that are common to the class on each of the Plaintiffs' claims.  As to the RICO fraud claim, common issues include whether Cargill represented to all customers that batches of its products would be consistent in nutritional content in accordance with the formula; whether or not Cargill deviated from the specialized formula by substituting cheaper ingredients; and whether the dairy feed was consistent in nutritional content over time.  The Court further finds that issues of fact are common to the class regarding the state law fraud claim, including whether Cargill intended to deceive its customers.  These common issues are sufficient to establish commonality.

(3)  The claims of the representative parties are typical of the claims of the class. Like commonality, the typicality test is not demanding.  See id.  "It focuses on the similarity between the named [P]laintiffs' legal and remedial theories and the theories of those whom they purport to represent."  Id.  "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."  James v. City of Dallas, Tex., 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by* M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832 (5th Cir. 2012) & In re Rodriguez, 695 F.3d 360 (5th Cir.

2012).  In this case, the claims of all class members, including the named Plaintiffs, arise from the same course of conduct by Cargill and share the same legal theories.  All class members are dairy farmers who purchased the same product - dairy feed - from Cargill. All class members purchased the product for the same purpose - to feed their herds.  All class members received the same representation of a special customized formula but were instead sold dairy feed comprised of cheaper ingredients.  This fact pattern is the basis for all of the Plaintiffs' claims; thus, the typicality requirement is satisfied.

(4)  The representative parties have fairly and adequately protected the interest of the class.  This requirement has two components.  See Georgine v. Amchem Products, Inc., 83 F.3d 610, 630 (3rd Cir. 1996).  "First, the interests of the named plaintiffs must be sufficiently aligned with those of the absentees." Id.  Next, "class counsel must be qualified and must serve the interests of the entire class."  Id.

As to the first component, the Court finds that the named Plaintiffs' interests and the other class members' interests are aligned.  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."  Mullen, 186 F.3d at 626. Such is not the case here. The named plaintiffs all seek the same relief under the same legal theories as the remainder of the class.  Thus, there is no conflict between the named plaintiffs and members of the class.  As to the second component, the affidavits submitted by Class Counsel clearly evidence that they are qualified, competent, and possess the requisite experience to protect the interests of the entire class.  See Record Documents 329-2, 329-3, 329-4, 329-5, and 329-6.

(5)  The questions of law or fact common to the class predominate over any

questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Courts have interpreted this language as setting forth two distinct requirements: "predominance" and "superiority." Mullen, 186 F.3d at 623.  "Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  Id. at 623-624.

To demonstrate that common issues predominate, the plaintiff should analyze the elements of each claim and explain how such elements are common to the class.  See Castano v. American Tobacco Co., 84 F.3d 734, 740-741 (5th Cir. 1996).  During the Fairness Hearing, Class Counsel argued this point succinctly, specifically pointing the Court to Plaintiffs' previously filed Memorandum in Support of Plaintiffs' Motion for Class Certification (Record Document 247-1 at 19-82).  In the memorandum, counsel analyzed in great detail the elements of each claim (RICO fraud, state law fraud, and breach of implied warranty) and explained how the elements are common to the class.  Such analysis demonstrated that common issues predominated in each instance; therefore, the Court hereby incorporates that analysis into the instant ruling and finds that the "predominance" factor has been met.

As to superiority, the Court must compare the available methods to adjudicate the controversy and consider, if the class were certified, how trial on the merits would be conducted.  See Doiron v. Conseco Health Ins. Co., 279 Fed. Appx. 313, 317 (5th Cir., 2008).  The superiority requirement is simply that "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Id.  Again, this issue was addressed by Class Counsel at the Fairness Hearing, but was analyzed in greater detail

Page 5 of  21

in the Memorandum in Support of Plaintiffs' Motion for Class Certification (Record Document 247-1 at 19-82). The Court is convinced both the argument and briefing that the only alternative to a class action in this case is a series of repetitive trials, which would require many judges and juries to hear the same lengthy factual and expert testimony on liability over and over, since no number of adverse jury verdicts would ever bind Cargill for any other case. A class action liability trial would settle the matter once and for all.[3]

Rule 23(b)(3) further directs the Court to consider four factors in evaluating predominance and superiority. As set forth below, these factors weigh in favor of certification.

(1)  "The class members' interests in individually controlling the prosecution or defense of separate actions." While this is an "opt out" class, only three opt-outs were filed - two timely and one untimely. The absence of a desire to proceed with a separate action speaks in favor of class certification.

(2)  "The extent and nature of any litigation concerning the controversy already begun by or against class members." There are no other actions pending by class members. This factor does not impede certification.

(3)  "The desirability or undesirability of concentrating the litigation of the claims in the particular forum." Under this factor, the Court must evaluate whether allowing a Rule 23(b)(3) action to proceed will prevent the duplication of effort and the possibility of inconsistent results and whether the forum chosen for the class actions represents an appropriate place to resolve the controversy. This Court has invested several years in resolving numerous contested issues and has developed considerable familiarity with the case. Since the case involves a nationwide class and a worldwide defendant, there is no other location that would have any particular advantage in terms of availability of witnesses and evidence.

---

[3]Even the need for small group trials to determine damages does not detract from the superiority of the class action device, since individual damage determinations would also be required by the only alternative device, that is, individual trials.

(4)     "The likely difficulties in managing a class action."   This factor concerns the exceptional difficulties affecting the instant case.  While this case would present challenges for the Court, there is nothing about the nature of the claims that cannot be adequately managed by the Court with the assistance of competent and professional counsel.

**Settlement is Fair, Reasonable, and Adequate**

The Court further finds that the settlement in this matter is fair, reasonable, and adequate.  See F.R.C.P. 23(e)(1)(C); Newby v. Enron Corp., 394 F.3d 296, 300-301; In re Combustion, Inc., 968 F.Supp. 1116, 1124 (W.D. La. 1997).  In reaching this conclusion, the Court considered the following factors:  (1) the absence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members.  See Reed v. General Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983).

**(1)     The Absence of Fraud or Collusion Supports Approval of the Settlement.**

The record in this case amply proves that, for almost eight years, counsel for Plaintiffs and Cargill have vigorously represented their clients' interests. This litigation has involved a series of hotly contested events and the parties remained at arms-length even when they entered settlement negotiations, which continued from November of 2011 through May of 2012. There is no allegation of collusion, and absolutely no evidence in the record to support such a finding.

**(2)     The Complexity, Expense, and Likely Duration of Further Litigation Support Approval of the Proposed Settlement.**

Continued litigation in this matter would be lengthy, complex, and expensive.  Both

sides would incur significant time and expense associated with retaining experts, conducting extensive further discovery and depositions, briefing and arguing class certification, briefing liability issues, and preparing for a trial and trying this case.  "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." Klein v. O'Neal, Inc., 705 F. Supp. 2d 632, 651 (N.D. Tex. 632).

**(3)     The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement.**

The parties' settlement came at an ideal point in this litigation. The parties had litigated this matter for about seven years (six years as a potential class action) before reaching a settlement. The parties had litigated several key legal issues, such as whether the plaintiffs could plead this matter as a potential class action.  The parties had also engaged in extensive class certification written discovery.  Yet, there was still material litigation left to be conducted, which further supports the settlement. In summary, the parties reached their settlement late enough in the process to be well-informed but early enough that settlement will conserve enormous party and judicial resources.

**(4)     The Probability of Success on the Merits Supports Approval of the Settlement.**

The Court appreciates the hotly contested nature of this litigation.  The outcome both as to certification of a litigation class and as to the merits is highly uncertain and proceeding in this matter would be time-consuming, costly, and risky for all parties involved.  Viewed through this prism, the proposed settlement is highly beneficial to the settlement class, a factor that weighs heavily in favor of approval of the settlement.

**(5)     The Range of Possible Recovery Supports Approval of the Settlement.**

The fact that liability and damages are both hotly contested tips this factor significantly in favor of settlement, as observed by the court in <u>Klein</u>:

> In sum, Long [an objector], on the one hand, and the class plaintiffs and defendants, on the other hand, have different views about CVS's potential liability. But that is not the point. What matters is that the question is debatable, and the position taken by the class plaintiffs and defendants is reasonable.

<u>Klein</u>, 705 F. Supp. 2d at 660.  In this case, it is clear that Plaintiffs believe they can prevail and obtain very significant damages, while it is Cargill's position that a litigation class could not be certified, a trial on the merits would lead to a defense verdict, and the prospect of damages for the Plaintiffs is extremely uncertain.  In particular, as both parties agree, each and every individual class member would have the burdensome task of proving its own individual damages were it not for the settlement.  Weighed against the prospect of no recovery, a small recovery, or a recovery (large or small) delayed for years is the certainty of substantial and near-immediate benefits to the settlement class through the vehicle of settlement.   Settlement class members (past, current, and future) also receive a non-monetary benefit in the form of a clear written disclosure from Cargill that explains Cargill's nutrient-based philosophy of dairy nutrition. Balancing the monetary and non-monetary benefits to the settlement class against the risks and expense of continued litigation clearly demonstrates that the proposed settlement is fair, reasonable, and adequate.

**(6)     The Opinions of Class Counsel, Class Representatives, and the Absent Class Members Support Approval of the Settlement.**

The Court first notes that not a single class member has objected to the settlement,

a powerful statement regarding the opinions of absent class members.  Similarly, only two timely opt-outs were received. The existence of these opt-outs establishes that the settlement process worked, and those class members who wished to opt out were in fact able to do so. However, the fact that only two class members chose to opt out also demonstrates that there was not dissatisfaction with the settlement.  Additionally, the 39 class representatives unanimously accepted the settlement.  The unanimous approval of the class representatives weighs in favor of approval by this Court.

Moreover, Class Counsel fully endorses the settlement.  After almost eight years of investigation, motion practice, and discovery, Class Counsel is well situated to assess the strengths and weaknesses of the case.  Where the opinions of Class Counsel, class representatives, and the absent class members unanimously favor the settlements as proposed, this factor weighs heavily in favor of approval. See Combustion, 968 F. Supp. at 1129.

**Notice; Opt-Out and Objection Process**

At the Fairness Hearing, counsel for Cargill outlined its compliance with the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715.  Defendant Cargill has served upon the appropriate state official, as defined in Section 1715(a)(2), of each state in which a class member resides and the appropriate federal official, as defined in Section 1715(a)(1), a notice of the proposed settlement and attachments.  None of the officials have objected to the settlement or otherwise intervened in this action.

Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." F.R.C.P. 23(b)(2)(B).  The rule

further requires that "the notice must clearly and concisely state in plain, easily understood language:

  (I)  the nature of the action;

  (ii)  the definition of the class certified;

  (iii)  the class claims, issues, or defenses;

  (iv)  that a class member may enter an appearance through an attorney if the member so desires;

  (v)  that the court will exclude from the class any member who requests exclusion;

  (vi)  the time and manner for requesting exclusion; and

  (vii)  the binding effect of a class judgment on members . . . ."

Id.  "The notice provisions of Rule 23 . . . are meant to protect the due process rights of absent class members."  Juris v. Inamed Corp., 685 F.3d 1294, 1317 (11th Cir. 2012).

"Due process does not require actual notice, but rather a good faith effort to provide actual notice."  Newburg on Class Actions § 11.53 (4th ed. 2002).  "Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties.  Similarly, Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members."  Id.

  As part of the Joint Motion, the parties submitted the Declaration of Mark Carpenter ("Carpenter"), a lawyer from Cargill, who outlined the process of identifying the potential settlement class members.  See Record Document 328-2.  Carpenter also spoke on this issue during the Fairness Hearing.  The linchpin of Cargill's effort to identify potential settlement class members was its sales database and the use of filters in conjunction with

such database to identify direct purchasers who would qualify under the terms of the Settlement Agreement.  As to indirect purchasers, Cargill turned to its managers from each of its five regions in the United States to identify additional persons.

The parties likewise submitted the Declaration of Dustin Mire ("Mire"), a representative of the CADA.  See Record Document 328-3, Exhibits 1-7. Mire detailed the steps taken by the Settlement Administrator (Special Master together with the CADA) to ensure compliance with the Settlement Agreement and to ensure notice was properly provided to Class Members.  See Record Document 328-3 at 1.  His declaration confirmed that the notice packet, which included the Class Notice and Claim Form required to be completed in order to participate in the settlement, was mailed to all known members of the settlement class.  The CADA sent the notice packet to 12,076 potential settlement class members.  Of the 12,076 packets initially sent, 894 were initially returned by the post office as undeliverable.  With respect to those packets that were returned, the CADA used subscription databases to attempt to locate more recent addresses, and resent notice packets to the new addresses where they could be located.  Through the use of this procedure, the number of potential settlement class members whose packets were undeliverable was reduced to 516, representing a penetration/delivery rate of 95.72%, or almost 96% - an exceptional rate.

During the Fairness Hearing, Class Counsel also explained both the opt-out and objection process.  The potential settlement class members were notified of their right to request exclusion from the proposed settlement and that the deadline for doing so was September 14, 2012.  Two potential settlement class members submitted timely requests to be excluded from the settlement and one potential settlement class member submitted

an untimely request to be excluded from the settlement.  Likewise, the potential settlement class members were notified of their right to object to any portion of the proposed settlement and the deadline for doing so was September 14, 2012.  No timely objections to the proposed settlement were lodged with the Court, CADA, or counsel.  The Special Master gave a supplemental report during the Fairness Hearing and stated that no objections had been filed in the record as of November 7, 2012.  He also explained that he checked in and around the Courtroom to see whether anyone present objected.  He heard no objections.  The Court then polled the Courtroom for objections and none were heard.

Considering the aforementioned Declarations of Carpenter and Mire as well as the additional arguments made in the Joint Motion and during the Fairness Hearing, the Court finds that the notice procedures employed in this case satisfied all of the Rule 23 requirements and due process.

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS**:

The proposed settlement class consisting of all persons who purchased Customized Dairy Feed (defined as feed that a person purchased to be fed to dairy animals, the formula for which was specifically created for that particular person by Cargill or was specifically created for that particular person by a non-Cargill employee using Cargill's proprietary dairy software technology) in the United States from January 1, 2001 through March 31, 2012, and fed it to that person's dairy cows in whole or in part as a Lactating Ration (defined as a ration fed to dairy cows giving milk to be sold commercially) or a Dry Ration (defined as a ration fed to pregnant dairy animals, whether cows or heifers, to prepare them for giving milk to be sold commercially) is hereby certified as a settlement class only pursuant to Federal Rule of Civil Procedure 23.

The proposed settlement set forth in the Settlement Agreement is approved and the terms and conditions contained in the Settlement Agreement are hereby incorporated.

The Settlement Administrator is hereby authorized to administer the settlement claims handling process but only in strict accordance with all of the terms of the Settlement Agreement.  Specifically but without limitation, the Settlement Administrator is hereby authorized to make all decisions and to resolve all disputes concerning the validity, accuracy, and completeness of the Claim Forms submitted by claimants, subject to this Court's oversight, review, and approval of all such decisions and resolutions prior to the entry of the Final Distribution Order.  The fees and expenses of the Settlement Administrator shall continue to be paid out of the settlement fund.  The fees, expenses, and taxes of the escrow account shall also be paid out of the settlement fund.  As used herein, the term "Settlement Administrator" shall include both the Special Master and the CADA, acting under the Special Master's direction and supervision.

The calculation method described in Section 2 of the Settlement Agreement is hereby adopted as the method by which the Settlement Administrator shall calculate the amount to be paid to each claimant.

No person shall have any claim against the parties, Class Counsel, Cargill's counsel, the Settlement Administrator, the Escrow Agent, or any agent thereof, based on the distributions made substantially in accordance with the terms of the Settlement Agreement, this Final Order and Judgment, or any orders of this Court.

As more detailed in a separate Memorandum Order, the Court hereby finds that Class Counsel's request for attorney's fees and expenses is reasonable and awards Class Counsel $9,166,666.66 in attorney's fees and expenses, representing one-third of the

monetary portion of the settlement.  The Settlement Administrator shall pay to Class Counsel, from the Settlement Fund, the attorney's fees and expenses on the Effective Date as defined in Section 1.21 of the Settlement Agreement.

The Settlement Administrator shall pay to Plaintiffs and Class Representatives, from the Settlement Fund, enhancement awards as described below as part of the final distribution of the settlement.

| PLAINTIFF | ENHANCEMENT AWARD |
|---|---|
| Mike Beebe d/b/a Beebe Dairy | $5,000.00 |
| Clay & Terry Bernick d/b/a Bernick's Registered Holsteins | $10,000.00 |
| Paul & Vickie Best d/b/a Best Dairy | $5,000.00 |
| Brian & Sally Hoover, d/b/a Buck Hollow Farms | $5,000.00 |
| Charles & Jane Casler d/b/a Casler Dairy | $10,000.00 |
| Bruce Martin d/b/a Church Road Dairy | $5,000.00 |
| Jim Tevelde d/b/a Circle T Farms | $15,000.00 |
| Jeff Bender d/b/a Covewind-Hill Dairy | $5,000.00 |
| Glover & Janet Hayes d/b/a Cross Creek Dairy | $10,000.00 |
| Mike Berger d/b/a Deer Run Dairy | $15,000.00 |
| Paul Louis and Alvin Diamond d/b/a Diamond Farms | $15,000.00 |
| Scott & Gail Fairman d/b/a Scott and Gail Fairman/Fairman Holsteins/Fairman Farms | $5,000.00 |
| John Burford d/b/a Four J Farms | $15,000.00 |
| George Goldey, Jr. d/b/a George Goldey, Jr. | $10,000.00 |
| Tami Gorzeman d/b/a Gorzeman Dairy | $5,000.00 |
| Adam Jackanicz d/b/a Green River Dairy | $5,000.00 |
| Wayne & Jennifer Schofield d/b/a Happy Acres Farm | $10,000.00 |

| | |
|---|---|
| Michael Harmeyer d/b/a Harmeyer Dairy | $5,000.00 |
| Don Hart d/b/a Hart Farms | $10,000.00 |
| Gary & Sally Jean Hill | $5,000.00 |
| T. J. Jenkins d/b/a Jenkins Dairy | $5,000.00 |
| Diane Lourenco d/b/a J&D Lourenco Dairy | $5,000.00 |
| Gary & Cornelia Larrabee d/b/a Jasumi Farms | $10,000.00 |
| Timothy Christopher & Renee Alford d/b/a Locust Hill Farm | $15,000.00 |
| Brian Reedy d/b/a Lynrae Dairy | $5,000.00 |
| Monroe & Ann McAnally d/b/a McAnally Dairy Farm, Inc. | $10,000.00 |
| Randal Beitzel d/b/a MD Maple Meadows Holsteins | $5,000.00 |
| Richie & Sheri Heida d/b/a Milky Way Dairy | $15,000.00 |
| Eduardo Echeverria d/b/a Newhouse Dairy | $15,000.00 |
| Brian & Geri Harp d/b/a Piece O'Nothin Farm | $5,000.00 |
| Dwight Pritchett d/b/a Pritchett Dairy | $5,000.00 |
| Alan Reed d/b/a Reed's Dairy | $10,000.00 |
| Russell Scott & Pamela Hayes d/b/a Russell Scott Hayes Dairy | $10,000.00 |
| Royce & Kristy Salley d/b/a Salley Dairy | $15,000.00 |
| Richard Jonelis d/b/a Shadow Valley Farms | $15,000.00 |
| Douglas & Sharon Turner d/b/a Simplicity Farm | $5,000.00 |
| Bennie Gonsalves, Jr. & Sandy Gonsalves d/b/a Sunnyside Dairy | $15,000.00 |
| Larry Hilarides d/b/a Triple H Dairy | $15,000.00 |
| Lynn & Alice Wakefield d/b/a Wakefield's Meadowbrook Farm | $15,000.00 |

The Court hereby adopts the recommendation of the Settlement Administrator concerning untimely claims.  Any persons submitting untimely claims shall not receive any of the settlement proceeds.

The Court deems the requests for exclusion of Sara Austin and James and Cynthia

Moore to be valid, and any and all claims they might otherwise have against Cargill shall survive this action and this Settlement.  Sara Austin and James and Cynthia Moore are not considered to be Settlement Class Members for purposes of this action and they are not releasing any claims.

The Court hereby adopts the recommendation of the Settlement Administrator concerning the untimely request for exclusion.  The untimely request for exclusion submitted by Buchip Farms, LLC shall be null and void.  Buchip Farms, LLC shall be bound by all Orders of this Court pertaining to the settlement class and by the Settlement Agreement.

The Settlement Administrator shall provide to the parties a preliminary Final Claimant List and all other data and supporting information required by Paragraph 9.1 of the Settlement Agreement no later than (a) five business days after the completion of the process described in Paragraph 2.1.3 of the Settlement Agreement for all Claimants with indirect purchase claims or (b) five business days after the issuance of the Final Order and Judgment, whichever is later.

The parties shall have ten days in which to object to the preliminary Final Claimant List and all other data and supporting information by filing an objection with this Court explaining the basis therefor.

Upon the occurrence of the earliest of (a) the expiration of the period for objections described in Paragraph 12 above with no objections having been made; (b) the expression by both parties to the Settlement Administrator that there are no objections; or (c) the Court's resolution of any objections described in Paragraph 12 above, the Settlement Administrator shall (a) send each Claimant a letter identifying the approximate amount that

Claimant will be paid through the Settlement and how that amount was computed, and (b) send each Person who submitted a claim form deemed invalid or untimely a letter stating the reason(s) the claim form was deemed as such and the basis therefor.  These letters shall give each recipient thirty days to contest the Settlement Administrator's decision or allocation by submitting a written statement of objection to the District Court, the Settlement Administrator, Class Counsel, and Cargill's Counsel.  For purposes of including in these letters the approximate amount that each Claimant will be paid, the Settlement Administrator may provide a range or assume some small subsequent increase in Total Qualified Tons.

Five business days after resolution of the submitted statements of objection referred to in Paragraph 13 above or five business days after the time to submit statements of objection as referenced in Paragraph 13 above has passed without any such statements of objection having been filed, but in no event before the Effective Date, the Settlement Administrator shall prepare and provide to Class Counsel and Cargill's Counsel:  (a) the Final Claimant List; (b) a document showing the amount of Residual, if any, and how it was calculated; and (c) an itemization of all Administration Expenses incurred but not yet paid and an itemized estimate of the Administration Expenses the Special Master reasonably expects to be incurred in connection with the final distribution.  At the same time but separate from the Final Claimant List, the Settlement Administrator shall prepare and provide to Class Counsel and Cargill's Counsel all data supporting the Final Claimant List, including but not limited to the Settlement Payment Period, Claimed Tons, and Qualifying Tons of each Claimant, and the Total Qualifying Tons.

At least ten business days after providing the Final Claimant List to Class Counsel

and Cargill's Counsel pursuant to Paragraph 14 above, the Special Master shall submit the Final Claimant List to this Court for approval, request the issuance of a Final Distribution Order approving the allocation and distribution to the Settlement Class and ordering the release of all Administration Expenses not previously released from the Escrow Account to the Special Master.  To protect the privacy of Claimants, and because the Final Claimant List may contain proprietary or other confidential information, the Final Claimant List shall be filed under seal with this Court.  Plaintiffs or Cargill shall submit to this Court any objections to the Final Claimant List, the residual calculation, or the Administration Expenses within five business days of the filing of the same by the Special Master.

The Court adopts the stipulation of the parties concerning non-monetary relief to the benefit the Settlement Class.  Specifically, Cargill has developed a document entitled "The Cargill Nutrient-Based Approach to Dairy Nutrition," which is attached to the Settlement Agreement as Exhibit D.  Cargill shall use, at least through the end of 2013, "The Cargill Nutrient-Based Approach to Dairy Nutrition," or another similar document that generally discloses, as determined in Cargill's sole discretion, that ingredients in Cargill's customized dairy feed will change over time for various reasons, including but not limited to changes in the nutrient content of on-farm ingredients, changes in ingredient supplies, or changes in market prices, in the following manner:

(a)     By posting it on the Cargill website at www.cargill.com/dairy;

(b)     By providing it on a quarterly basis to all United States customers currently purchasing dairy products directly from Cargill; and

(c)     By including it as part of the "new customer" packet provided to new dairy customers that includes marketing materials and a credit application.

Cargill asserts that its previous communications with its customers have been adequate in terms of disclosing ingredient substitution, and Plaintiffs agree that the non-monetary relief provided for herein does not constitute an admission of any nature on the part of Cargill, and that Plaintiffs shall never argue otherwise.  The Court further finds that the use of this disclosure is not an admission that can be used against Cargill.

The Orders and rulings of this Court requiring Cargill to disclose the pendency of this action in connection with certain releases of claims (Record Document 115; Record Document 120; and Record Document 126) are hereby vacated.

As the parties have agreed, and this Court finds, nothing with respect to the Settlement Agreement, submission of the Joint Motion, the Fee Application, or otherwise in any respect related to the class settlement process in this matter shall be deemed an admission of any kind or as a waiver of any party's rights, and in the event a class settlement is not approved or finalized, no person shall be able to assert that any such admission or waiver has occurred or otherwise use the submission against a party's interests in this or other proceedings.

In all other respects not in conflict with this Final Order and Judgment, the Settlement Agreement shall govern the rights and obligations of the parties and their counsel, Settlement Class Members, Settlement Administrator, and Escrow Agent.

The Court dismisses this action on the merits and with prejudice, without costs to any party.  The Released Parties are forever released and discharged from any and all of the Released Claims.  All Settlement Class Members are permanently barred and enjoined from instituting an action or prosecuting against any and all Released Parties with regard to all Released Claims.

The Court hereby finds that the instant Final Order and Judgment is final and appealable and constitute a full, final, and complete resolution of all claims between the Settlement Class and Cargill.  The Clerk of Court is directed to enter final judgment on this matter pursuant to Federal Rule of Civil Procedure 54.

Without in any way affecting the finality of the instant Final Order and Judgment, this Court will retain continuing jurisdiction over the implementation of the Settlement Agreement.  The qualified settlement fund shall be deemed to be in the custody of this Court and subject to the jurisdiction of this Court until such time as the funds are distributed in their entirety.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana this 8th day of November, 2012.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE