UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOHN BURFORD, ET AL. | CIVIL ACTION NO. 05-0283 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CARGILL, INCORPORATED | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is an unopposed Motion to Approve Attorneys' Fees and Application for Approval of Enhancement Awards (Record Document 329) filed by Class Counsel. After reviewing the motion, the memorandum in support, and the affidavits of Class Counsel as well as hearing the argument of counsel during the November 7, 2012 Fairness Hearing, the Court approves attorneys' fees in the amount of $9,166,666.66 and the payment of enhancement awards to named Plaintiffs as set forth in Section 10.2 of the Settlement Agreement (Record Document 314-1 at 39-40).

The Court specifically finds that the attorney fee award in this matter is reasonable and appropriate under Federal Rule of Civil Procedure 23(h). In common fund cases such as the instant matter, courts generally use one of two methods for calculating attorneys' fees: "(1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." Union Asset Mgmt. v. Dell, Inc., 669 F.3d 632, 642-643 (5th Cir. 2012). The Fifth Circuit recently endorsed the district courts' "use of the percentage method cross-checked with the Johnson factors," specifically stating:

> We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the Johnson considerations.

Id. at 644 (5th Cir. 2012).

Here, the Court determined the amount of the fee award by employing the percentage method. The undersigned found the percentage method to be the most sensible approach in this matter because it is predictable, encourages settlement, and reduces incentives for protracted litigation. See id. at 644, n. 34. Under this method, the Court is first required to determine the actual monetary value conferred to the class members by the settlement. See In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation, 851 F.Supp.2d 1040, 1075 (S.D.Tex. 2012). "The [C]ourt then sets the benchmark percentage to be applied to this value." Id. After setting the benchmark, the Court applies the Johnson factors "to determine whether a positive or negative adjustment of the benchmark [is] warranted." Id.

Under the percentage method, the Court values the settlement at $27.5 million. This sum is provided for in the Settlement Agreement and has already been deposited by Cargill into an escrow account. This valuation amount includes administrative costs and attorneys' fees, which are generally viewed as an aspect of the class recovery. See id. at 1078 ("The award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."). Additionally, while the Settlement Agreement provides for a small residual, the Court still considers the total settlement fund as available to the class when calculating the value of the settlement for purposes of the attorney fee award.

See Waters v. Intern. Precious Metals Corp., 190 F.3d 1291, 1297 (11th Cir. 1999) ("[C]lass counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed" where the defendant has reserved the right to recapture any unclaimed portion of the common fund after class members have had an opportunity to make their claims against the fund).

Next, the Court must set the appropriate percentage benchmark. The Settlement Agreement provides for a fee of one-third of the common fund. See Record Document 314-1 at ¶ 10.1. The contracts of representation signed by the class representatives provide for fees of 40 to 47.5 percent. See Record Document 329-4 at ¶¶ 34-36. While there is no general rule as to what constitutes a reasonable percentage of a common fund, "district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee." In re Combustion, Inc., 968 F.Supp. 1116, 1133 (W.D.La. 1997). Class Counsel have also submitted affidavits indicating "that the customary contingent fee charged for similar work in this community ranges from one-third to [forty] percent." Record Document 334 at ¶ 3; Record Document 335 at ¶ 3. Thus, in light of the Settlement Agreement, the contracts of representation, precedent within the Fifth Circuit, and the affidavits filed in the record, the Court finds that the benchmark percentage in this case is one-third.

Finally, the Court must apply the Johnson factors to the benchmark to ascertain whether an adjustment of the benchmark is necessary. The twelve factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Combustion, 968 F.Supp. at 1134, citing Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-719 (5th Cir. 1974). While the analysis does not have to be "meticulously detailed," the Fifth Circuit requires that the district court "explain how each of the Johnson factors affects its award. See In re High Sulfur Content Gasoline Products Liability Litigation, 517 F.3d 220, 228 (5th Cir. 2008).

### 1. The Time and Labor Required.

This litigation is nearly eight years old. The same two law firms have managed and funded this case for its entirety. The affidavits of Roy S. Payne, Julie Payne Johnson, Sam N. Gregorio, Harry DeHaan, and A.J. Gregory, Jr. establish that these five attorneys expended more that 11,200 hours of work on this case. See Record Documents 329-2, 329-3, 329-4, 329-5, and 329-6. The case required an enormous amount of time and labor; thus, this factor supports a substantial attorney award.

### 2. The Novelty and Difficulty of the Questions.

In Johnson, the Fifth Circuit explained:

Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law." Instead, he should be appropriately compensated for accepting the challenge.

Johnson, 488 F.2d at 718. This lawsuit involved novel and difficult issues of both law and

fact. The development of the case required technical knowledge of the dairy industry and the science of dairy nutrition. Counsel was also faced with substantial legal challenges such as certification of a nationwide class action based in part on state law fraud claims. While Class Counsel believes they would have succeeded on the merits, they acknowledge that success on some legal issues would have involved breaking new legal ground. Thus, this factor weighs in favor of a substantial fee award.

### 3. The Skill Requisite to Perform the Legal Service Properly.

In considering this factor, "the trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." Id. "The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration." Id. Again, the affidavits of Class Counsel demonstrates the distinguished work experience of the five attorneys. See Record Documents 329-2, 329-3, 329-4, 329-5, and 329-6. Moreover, a review of the lengthy record in this matter easily establishes that the work product submitted in this case has been exceptional in all respects. The Court further notes that the organization, discipline, cooperation, and team work of counsel were evident by the submissions made in preparation for the Fairness Hearing and by the argument presented during the Fairness Hearing. Again, this factor supports a substantial attorney award.

### 4. The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.

This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent

on the client's behalf for other purposes." Johnson, 488 F.2d at 718.  The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter.  See Record Documents 329-2, 329-3, 329-4, 329-5, and 329-6.  The affidavits specifically reference prolonged periods of time when work on this case required almost exclusive attention from some of the Class Counsel.  See Record Document 329-2 at ¶ 26; Record Document 329-3 at ¶¶ 8-14.  This factor weighs in favor of a substantial fee award.

      5.    **The Customary Fee.**

"The customary fee for similar work in the community should be considered," as "it is open knowledge that various types of legal work command differing scales of compensation."  Johnson, 488 F.2d at 718.  In the Western District of Louisiana, the customary contingency fee for representation of plaintiffs "ranges from 33 1/3% to 50% of the gross award plus costs for cases requiring the institution and prosecution of litigation."  In re Bayou Sorrel Class Action, No. 6:04-1101, 2006 WL 3230771, *5 (W.D.La. Oct. 31, 2006).  The affidavits submitted by Class Counsel also reflects "that the customary contingent fee charged for similar work in this community ranges from one-third to [forty] percent, with some upward and downward variation depending on the facts and law."  Record Document 334 at ¶ 3; Record Document 335 at ¶ 3.  Thus, this factor supports approval of the one-third fee, which is a substantial award.

      6.    **Whether the Fee Is Fixed or Contingent.**

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case."  Johnson,

488 F.2d at 718. Here, counsel undertook the representation of all named plaintiffs on a contingency basis, particularly a contingency fee ranging from 40 to 47 percent. See Record Document 329-4 at ¶¶ 34-36. "District courts within this circuit have found upward adjustments appropriate if counsel took the case on a contingency basis." Heartland, 851 F.Supp.2d at 1084. However, "merely taking a case on a contingency basis does not merit an upward adjustment if the benchmark reflects the market rate." Id. While this case was taken on a contingency fee basis, the benchmark appears to reflect the market rate. Thus, this factor appears to be neutral.

### 7. Time Limitations Imposed by the Client or the Circumstances.

"Priority work that delays the lawyer's other legal work is entitled to some premium." Johnson, 488 F.2d at 718. Again, as previously noted, the affidavits submitted by counsel evidence that there have been numerous periods of time during the eight-year history of this case in which counsel have been forced to give this case priority over other work. See Record Documents 329-2, 329-3, 329-4, 329-5, 329-6. Therefore, this factor weighs in favor of a substantial fee award.

### 8. The Amount Involved and the Results Obtained.

The eighth factor is "the amount involved and the results obtained." Union Asset Mgmt., 669 F.3d at 642, n. 25. "The United States Supreme Court and the Fifth Circuit have held that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." In re Enron Corp. Securities, Derivative & ERISA Litigation, 586 F.Supp.2d 732, 796 (S.D.Tex. 2008). Here, the Court finds that a high degree of success has been obtained in this matter. The $27.5 million settlement amount provides substantial awards to class members who have claimed significant losses. Thus,

Class Counsel have achieved a settlement that provides substantial financial relief to the class. The settlement also provides for nonmonetary relief aimed at rectifying the problem that led to this litigation. Cargill has agreed to provide notice to its customers regarding its practice of ingredient substitution, which Plaintiffs believe will allow customers to make informed decisions regarding the purchase of Cargill feed. See Record Document 314-1 at ¶ 2.5. This agreement is a significant non-monetary benefit to the class.

### 9. The Experience, Reputation, and Ability of the Attorneys.

"Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." Johnson, 488 F.2d at 718-719. "Longevity *per se*" does not dictate the higher fee, as a young attorney who demonstrates skill and ability should not be penalized for only recently being admitted to the bar. Id. at 719. The affidavits filed in the record provide evidence of the experience, reputation, and ability of Class Counsel. See Record Documents 329-2 at ¶¶ 1-11, 329-3 at ¶1-6, 329-4 at ¶¶ 1-8, 329-5 at ¶1-14, and 329-6 at ¶¶ 1-5. The Court further notes that all of the attorneys have performed exceptionally well in this complex litigation. Thus, this factor supports a substantial fee award.

### 10. The "Undesirability" of the Case.

Cases may be deemed "undesirable" when "the defendant is a large corporation with substantial resources, financial and otherwise, for a vigorous defense; and the legal and factual issues presented risks to recovery absent settlement." Heartland, 851 F. Supp. 2d at 1085. Where class counsel is "a relatively small group of attorneys with limited resources pitted against . . . [a larger entity] with access to enormous legal resources," the tenth factor weighs in favor of a substantial fee. In re Bayou Sorrel, 2006 WL 3230771 at

*6. Where "the case necessarily consumed a significant portion of the financial resources and careers of each member of [class counsel]" and "the risk assumed by [class counsel] handling the case on a contingency basis, was substantially significant given the real possibility that the suit would not be successful," this factor weighs in favor of a substantial fee. Id. Here, Class Counsel are a small group of attorneys pitted against one of the world's largest privately owned corporations. Class Counsel have also handled this matter on a contingency basis for almost eight years, bearing the many risks and costs of the litigation. Therefore, many considerations justifying a substantial fee award are present in this matter.

### 11. The Nature and Length of the Professional Relationship with the Client.

Class Counsel have represented the class representatives for nearly eight years. The record reflects that during this time, counsel frequently worked with their clients to marshal evidence in support of their claims and also provided them with updates, answers, and assurance when needed. The supplemental affidavit of Harry DeHaan, is particularly instructive on this issue. See Record Document 336. Thus, in a case such as this, where counsel has been quickly responsive to class members who needed explanations, assistance, and assurances, the eleventh factor weighs in favor of a substantial award. See In re Bayou Sorrel, 2006 WL 3230771 at *6.

### 12. Awards in Similar Cases.

"The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." Johnson, 488 F.2d at 719. "Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable." DeHoyos v. Allstate Corp., 240 F.R.D. 269, 333 (W.D.Tex. 2007). Here, a

review of analogous precedent indicates that an award of one-third of the common fund is reasonable and typical. In re Bayou Sorrel Class Action, No. 6:04-1101, 2006 WL 3230771, *5 (W.D.La. Oct. 31, 2006) is an analogous lawsuit wherein Class Counsel was awarded attorneys' fees in the amount of 36 percent of a common fund of $28 million in the Western District of Louisiana. The court found "that in Louisiana practice of fees awarded has consistently been at the 40 percent level." Id. at *7. And again, Class Counsel have submitted affidavits stating "that the customary contingent fee charged for similar work in this community ranges from one-third to [forty] percent." Record Document 334 at ¶ 3; Record Document 335 at ¶ 3. Thus, an award of one-third of the common fund is reasonable and typical.

The final step of the Johnson analysis is for the Court to determine whether the benchmark should be adjusted in light of the aforementioned twelve factors. The Court's analysis demonstrates that the majority of the twelve factors supports a substantial award of attorneys' fees. While one factor was neutral, none of the factors support a negative adjustment of the benchmark percentage. Therefore, the Court finds no adjustment of the benchmark necessary. The resulting fee award under the percentage method is one-third of the $27.5 million common fund, or $9,166,666.66.[1]

---

[1]Additionally, the Court performed a lodestar cross-check to control against "windfall fees" and to verify the reasonableness of the award calculated under the percentage method. See Enron, 586 F.Supp.2d at 751; Heartland, 851 F.Supp.2d at 1086. The lodestar method requires the court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate and to apply an upward or downward multiplier if necessary. See Union Asset Mgmt., 669 F.3d at 642-643. "A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier." Enron, 586 F.Supp.2d at 752.

The affidavits of counsel filed in the record establish that five attorneys expended more than 11,200 hours of work on this case. See Record Documents 329-2 at ¶10, 329-3

Finally, the Court finds that each named Plaintiff is entitled to an enhancement award to compensate him or her for the time and effort expended in representing the settlement class during this action. See Record Document 314-1 at ¶ 1.22. These awards range from $5,000 to $15,000 and are computed as set forth in the Settlement Agreement. See id. at ¶ 10.2. Such enhancement awards are appropriate compensation in this matter, as the named Plaintiffs provided services and shouldered special burdens during almost eight years of litigation. See Braud v. Transp. Serv. Co. of Illinois, No. 05-1898, 2010 WL 3283398, at *14 (E.D. La. Aug. 17, 2010); see also Humphrey v. United Way of Texas Gulf Coast, 802 F. Supp. 2d 847, 868 (S.D. Tex. 2011) ("Incentive awards are discretionary and 'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes to recognize their willingness to act as private attorney general.'" ). Here, each plaintiff

---

at ¶31, 329-4 at ¶38, 329-5 at ¶12, and 329-6 at ¶14. As demonstrated by the affidavits and by the record in this matter, this sum of hours was reasonable and necessary in light of the legal and technical complexity of the case, the numerous disputes between the parties, and sheer length of time that this matter has been pending.

    The hourly rates used by counsel are also reasonable. The affidavits set forth rates of $550 per hour for three attorneys, each with at least 35 years of experience with complex, federal litigation; $400 per hour for an attorney with 35 years of experience complex litigation and the dairy industry; and $300 per hour for an attorney with eight years of experience with federal litigation. See Record Documents 329-2 at ¶32, 329-3 at ¶ 31, 329-4 at ¶39, 329-5 at ¶15, 329-6 at ¶15. The affidavits establish that the respective attorneys possess the qualifications necessary to support such rates.

    Multiplying the hours expended by class counsel (11,200) by each attorney's hourly rate results in total fees of $5,135,000.00. Dividing the proposed attorney fee award of $9,166,666.66 by the lodestar of $5,135,000.00 yields a multiplier of 1.78. This low multiplier is reasonable, as it is well within the range of 1 to 4 typically approved by courts within this circuit. See Enron, 586 F.Supp.2d at 752; Heartland, 851 F.Supp.2d at 1088, n. 52; In re Combustion, 968 F.Supp. at 1133. In fact, it appears that a multiplier of three or four could easily be justified in this matter. Thus, the $9,166,666.66 fee award, which reflects a 1.78 multiplier, is reasonable and not a windfall fee award.

initially participated in telephone conferences with counsel, completed an intake questionnaire, discussed the questionnaire responses with counsel, and signed a contract of representation. See generally Record Document 336. As the litigation continued and as part of the discovery process, each plaintiff was required to fill out a detailed questionnaire regarding their use of Cargill feed and damages. See id. To answer the two questions, plaintiffs were generally required to go through years of their business records. See id. They were also required to produce hundreds of pages of records ranging from milk production records to tax returns. See id. Therefore, the record supports enhancement awards in this case as all of the named Plaintiffs have provided valuable services to the class.

Accordingly,

**IT IS ORDERED** that the attorneys' fees set forth in the Settlement Agreement (Record Document 314-1) are approved in the amount of $9,166,666.66.

**IT IS FURTHER ORDERED** that the attorney fee award of $9,166,666.66 be divided equally between Sam N. Gregorio APLC (aka the law firm of Gregorio, Gregory, Chafin & Johnson) and the Law Office of Harry DeHaan, with each of the two firms receiving 50 percent (and with each law firm to bear the costs it has previously paid and will pay in the future, which are subtracted from each firm's half of the one-third fee).

**IT IS FURTHER ORDERED** that attorney David P. Means, III, is entitled to an award of 15.78 percent of one-third of the total recovery (settlement award plus enhancement award) attributable to Plaintiffs John Burford and Royce and Kristy Salley, said award to be deducted from the total $9,166,666.66 attorney fee award, and to be paid by Sam N.

Gregorio APLC (aka the law firm of Gregorio, Gregory, Chafin & Johnson) and the Law Office of Harry DeHaan as set forth below.

**IT IS FURTHER ORDERED** that the amount due to Mr. Means shall be paid no later than 30 days after the final distribution order.

**IT IS FURTHER ORDERED** that, on the "effective date" as defined in Section 1.21 of the Stipulation and Agreement of Settlement (Record Document 314-1), the Settlement Administrator shall pay $4,583,333.33 (which is 50 percent of the $9,166,666.66 attorney fees and costs  award) to Sam N. Gregorio APLC (aka Gregorio, Gregory, Chafin & Johnson) and $4,583,333.33 (50 percent of the $9,166,666.66 attorney fees and costs award) to the Law Office of Harry DeHaan, and that Sam N. Gregorio APLC (aka Gregorio, Gregory, Chafin & Johnson) and the Law Office of Harry DeHaan shall each be responsible for the payment to David P. Means, III, of 50 percent of the amount due to Mr. Means as set forth above.

**IT IS FURTHER ORDERED** that, upon finding that each of the named Plaintiffs provided a valuable service to the class, payment of the enhancement awards to named Plaintiffs is approved as set forth in Section 10.2 of the Settlement Agreement (Record Document 314-1 at 39-40).

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 8th day of November, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE